UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAMON TURNAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 16-cv-11672 |
| | ) | |
| THOMAS DART, Sheriff of Cook County, | ) | Hon. Charles R. Norgle, Sr. |
| and COOK COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT COOK COUNTY'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Cook County, by its attorney, KIMBERLY M. FOXX, State's Attorney of Cook County, through her assistant, Patrick D. Morris, Assistant State's Attorney, brings this Memorandum of Law in Support of its Motion for Summary Judgment as to all claims against it in Plaintiff's Complaint, and in support thereof states as follows:

**INTRODUCTION**

Plaintiff, Daman Turnage, filed his Complaint against Defendants Cook County and Thomas Dart, Sheriff of Cook County ("CCSO"), pursuant to section 202 of the Americans with Disabilities Act ("ADA"), 42 USCS §12132, and section 504 of the Rehabilitation Act ("RA"), 29 USC §794(a)(2). [SOF ¶1-5]. Specifically, Plaintiff alleges that Defendants intentionally discriminated against him by failing to properly accommodate his "seizure disorder" disability at Cook County Jail. Specifically, Plaintiff alleges that Defendants failed to provide him with a low bunk bed in his cell, on both May 5, 2016 and September 21, 2016, thereby causing him to sustain injuries after he suffered a seizure and fall while sleeping on the top bunk. [SOF ¶6].

However, the evidence shows that Plaintiff failed to exhaust his administrative remedies, with respect to both alleged incidents, and is therefore barred from pursuing these claims pursuant to the Prisoner's Litigation Reform Act ("PLRA"). [SOF ¶34-44]. Furthermore, even we were to assume that Plaintiff is a qualified individual with a disability due to his seizure disorder, there is insufficient evidence for a jury to reasonably conclude that Cook County intentionally denied him access to a program or activity *because of* his disability. Rather, the evidence shows that Cook County medical personnel provided him with prescription medication to treat his seizure disorder and alerted the CCSO to have Plaintiff assigned to a lower bunk bed. [SOF ¶9]. Moreover, given the County does not operate Cook County Jail or control inmate movement, it had no responsibility or authority to actually place Plaintiff in a lower bunk bed. [SOF ¶25-33]. In any event, there is no evidence that Cook County was ever aware that Plaintiff was not properly assigned to a low bunk and failed to act, and thus no reasonably jury could conclude it intentionally discriminated against him because of his disability. [SOF ¶11-24].

Accordingly, Defendant Cook County is entitled to judgment as to all claims against it in Plaintiff's Complaint, as a matter of law.

## STANDARD OF REVIEW

Summary judgment is appropriate and shall be rendered when the pleadings, depositions, answers to interrogatories, together with affidavits, show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). The moving party's initial burden is to establish that there is no question of fact that will be outcome determinative in the case. *Id*. Once the moving party meets this burden, the opposing party must set forth specific facts that show a genuine issue of material fact exists. *Id.* The opposing party cannot rely on general conclusory

allegations, but rather "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Valentine v. Joliet Township High School Dist.*, 802 F.2d 981, 986 (7th Cir. 1986). All inferences from the record must be viewed in a light most favorable to the non-moving party. *Cahorn v. Michael*, 913 F.2d 327, 331 (7th Cir. 1990). However, the Court is not required to evaluate every conceivable inference that can be drawn from evidentiary matters, only reasonable ones. *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir. 1989). If the evidence is only colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

The non-moving party may not defeat a motion for summary judgment by resting on its pleadings. *Beard v. Whitley*, 840 F.2d 406, 410 (7th Cir. 1988). Rather, Rule 56(c) requires the non-moving party to go beyond its pleadings and show the existence of a genuine issue for trial by designating specific facts in its own affidavits, or by depositions, answers to interrogatories and admissions on file. *Celotex*, 477 U.S. at 324. In this case, Plaintiff cannot demonstrate there is a genuine issue of material fact to dispute that he failed to exhaust his administrative remedies, and therefore Defendant Jones is entitled to judgment as a matter of law.

## I. ARGUMENT

The American's with Disabilities Act ("ADA") seeks to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1) (2003). In pursuit of this goal, Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services . . . of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2003). The Rehabilitation Act ("RA"), 29 USCS § 701, serves a similar purpose as the ADA, and it is

3

well-established that the same legal analysis governs both RA and ADA. *See Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004).[1] Thus, under both the ADA and the RA, prisons must make reasonable accommodations for inmates with disabilities. *Jaros v. Ill. Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). Therefore, to support a claim under both the ADA and RA, Plaintiff must show that (1) he is a qualified person; (2) with a disability; and (3) that the Defendants denied him access to a program or activity because of his disability or otherwise subjected him to discrimination because of his disability. *Jaros*, 684 F.3d at 672.

Furthermore, the PLRA requires a prisoner to properly exhaust his administrative remedies before filing an action concerning prison conditions. *See* 42 U.S.C. § 1997e(a). Specifically, the PLRA states that no action shall be brought by a prisoner confined in any correctional facility with respect to prison conditions under section 1983 of this title, or any other Federal statutory law, including the claims brought under the ADA and RA, until such administrative remedies as are available are exhausted. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) (citing 42 U.S.C. § 1997e(a)); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong). Failure to exhaust is an affirmative defense that a defendant has the burden of proving. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). If a defendant shows an "absence of a genuine dispute over a material fact," then "exhaustion may be determined on summary judgment." *See Alonso v. Cook County*, 2013 U.S. Dist. LEXIS 103177 at *7 (N.D. Ill. 2013).

---

[1] The only difference between the RA and ADA is that the RA also requires that the program in which the plaintiff was involved received federal financial assistance. See 29 U.S.C.S. § 794(a).

Here, there is no genuine dispute of material fact that Plaintiff failed to exhaust his administrative remedies regarding his cell placement prior to his fall on both May 5 and September 21, 2016, and his claims are therefore barred under the PLRA. Furthermore, there is no genuine dispute that Defendant Cook County accommodated Plaintiff by assigning him a low bunk permit and providing him with appropriate medical prescriptions. Accordingly, Defendant Cook County is entitled to judgment as a matter of law.

**A. Plaintiff Failed to Exhaust His Administrative Remedies**.

The exhaustion requirement applies to all inmate suits, including claims under the ADA or the RA. *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong). Moreover, the Seventh Circuit has taken a strict compliance approach to exhaustion. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also King*, 781 F.3d at 893 (holding that the exhaustion requirement is strict, and that a prisoner "must comply with the specific procedures and deadlines established by the prison's policy.").

Here, the undisputed evidence shows that Cook County Jail had a formal grievance process that sets out the particular procedures inmates are required to follow, and that Plaintiff was made aware of the procedures when he received an inmate handbook upon his incarceration at Cook County Jail. [SOF ¶34-35]. The grievance process is also put forth on the grievance form itself, which states that an inmate is required to submit a grievance "within 15 days of the event he/she is grieving," and that "to exhaust administrative remedies, appeals must be made within 14 days of the date the inmate received the response" to the initial grievance. [SOF ¶36]. It is undisputed that the grievance process was available to Plaintiff, as he filed multiple grievances at

Cook County Jail and otherwise demonstrated a knowledge and ability to navigate the process. [SOF ¶37-44]. Nevertheless, there is no genuine dispute that Plaintiff failed to exhaust his administrative remedies with respect to the seizure and falls he allegedly suffered on both May 5, 2016 and September 21, 2016.

      *i. Plaintiff's Alleged Seizure and Fall on May 5, 2016.*

Plaintiff testified that he suffered a seizure and fall off the top bunk bed on May 5, 2016, which resulted in an injury to his head. [SOF ¶14]. Plaintiff testified that the injury could have been avoided because he should have been sleeping on the bottom bunk due to his seizure disorder, but that his cellmate had also been assigned to the bottom bunk. [SOF ¶12]. Plaintiff testified that he advised correctional officers that he or his cellmate needed to be moved to another cell so that they could both have bottom bunks, but that no action was taken. [SOF ¶13]. However, even if we assume *arguendo* that Plaintiff's testimony is true, the evidence shows that Plaintiff never filed a grievance prior to his fall on May 5, 2016 to advise prison officials of the issue. [SOF ¶38]. Moreover, although Plaintiff ultimately filed a grievance after his alleged fall, on May 7, 2016, and complained that he "was forced to get on the top bunk," he admits that he never appealed the grievance. [SOF ¶39].

Thus, the undisputed evidence shows that Plaintiff failed to abide by Cook County Jail's rules regarding the grievance process, as he did not file a grievance regarding his cellmate also being assigned a bottom bunk, and because he failed to file an appeal to his May 7, 2016 grievance at any point, which he was required to do within 14 days after receiving the response. [SOF ¶35-36]. *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (holding that a prisoner who does not properly take each step within the administrative process has failed to exhaust his administrative remedies and is foreclosed by the PLRA from litigating). Accordingly, Plaintiff's

6

claim against Cook County with respect to his May 5, 2016 seizure and fall is barred by the PLRA.

        ii. *Plaintiff's Alleged Seizure and Fall on September 21, 2016.*

The evidence shows that Plaintiff was assigned to Cell 18 from August 30, 2016 to September 23, 2016. [SOF ¶17]. Plaintiff testified that his cellmate was placed in the cell before him and had taken the lower bunk, thereby forcing him to take the top bunk. He further testified that he eventually suffered a seizure and fell from the top bunk on September 21, 2016. [SOF ¶19-20]. However, the evidence shows that Plaintiff did not file a grievance regarding the conflict with his cellmate over the bottom bunk until September 26, 2016. [SOF ¶44]. Thus, Plaintiff again failed to comply with Cook County Jail's administrative procedures because he did not file a grievance until more than 15 days after he first became aware of the issue, on August 30, 2016. [SOF ¶19-20, 44]. In other words, Plaintiff failed to provide prison officials with sufficient notice or opportunity to resolve the conflict, as is required under the PLRA. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (holding that "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance" because "the primary purpose of a grievance is to alert prison officials to a problem.").

Accordingly, Plaintiff's claim against Cook County with respect to the September 21, 2016 seizure and fall is barred by the PLRA, as a matter of law.

**B. The Undisputed Evidence Shows That Cook County Did Not Intentionally Discriminate Against Plaintiff Due To His Disability.**

Neither the ADA nor the RA requires special or preferred accommodations; they simply require reasonable accommodation for a disability. *Jaros v. Ill. Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). In the prison context, whether accommodations are reasonable for

purposes of the ADA must be judged in light of the overall institutional requirements, including security concerns, safety concerns, and administrative exigencies. 28C.F.R.§35.130(h). Determining the reasonableness of a particular accommodation, especially in the prison context, is highly fact-specific and determined on a case-by-case basis. *Holmes v. Godinez*, 311 F.R.D. 177, 226 (7th Cir. 2015).

With respect to the circumstances in this case, it is well-established in this jurisdiction, "Illinois sheriffs have final policy making authority over jail operations." *DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 (7th Cir. 2000); *see also Talley v. Dart,* 2012 WL 1899393*2-3 (N.D. Ill. May 16, 2012) (Feinerman, J.) (Amended May 24, 2012). Moreover, "Cermak [Health Services] provides medical care to the [Cook County Department of Corrections] inmates and is managed by Cook County; [Cook County Department of Corrections] is operated by the Sheriff's Department, a separate entity from Cook County." *Talley,* *2-3, *citing Boyce v. Moore*, 314 F.3d 884, 887 n.1 (7th Cir. 2002). Thus, given Plaintiff's claims are brought substantively against both Cook County and the CCSO in this case, the underlying Motion and this Memorandum are brought on behalf of named Defendant Cook County, as a substantive defendant, and specifically as it relates to medical care and accommodations provided to Plaintiff by Cermak.[2]

Here, Plaintiff testified that he has a life-long diagnosis of epilepsy, which is a seizure disorder, and that both Defendants failed to accommodate his disability when they failed to provide him with a low bunk, which caused him injury after he suffered seizures and falls while sleeping on the top bunk of his cell on both May 5, 2016 and September 21, 2016. [SOF ¶11-20]. However, the undisputed evidence shows that Cook County medical professionals did everything

---

[2] This motion seeks to have the substantive claims against the Defendant dismissed. Defendant Cook County will remain a party for indemnification purposes only in the even this Court denies Defendant Sheriff's Motion to Dismiss, filed concurrently with this motion . [ECF 62-64].

within their power and authority to ensure that his condition was both treated and accommodated immediately upon his incarceration at Cook County Jail, and there is insufficient evidence to reasonably conclude that Plaintiff intentionally discriminated against because of his disability. [SOF ¶7-9].

Specifically, the evidence shows that when County medical personnel evaluated Plaintiff during his initial intake at Cook County Jail on April 9, 2016, he was assessed for epilepsy and prescribed anti-seizure medication. [SOF ¶9, 25]. The undisputed evidence further shows that Cook County provided him with a "low bunk" permit and issued a "low bunk" alert within the County's electronic medical system, Cerner. [SOF ¶9, 26]. Once in Cerner, Plaintiff's low bunk alert was automatically transmitted to the CCSO's C-Coms system, which is used by the CCSO's "classification unit" to assess an inmate's individual medical needs and security considerations before placing them into a particular Division, Tier, Cell, and bed at Cook County Jail. [SOF ¶]27-30].

In other words, as soon as Cook County was made aware of Plaintiff's seizure disorder, they prescribed him appropriate medication and alerted the CCSO that he was to be assigned to a low bunk because of his seizure disorder, thereby providing reasonable accommodations for his alleged disability. *Green v. Butler*, 3:17-CV-93-NJR-MAB, 2019 U.S. Dist. LEXIS 162102, at *28 (S.D. Ill. July 19, 2019) (dismissing claims under ADA where evidence showed prison officials accommodated ambulatory disability with medical treatment and permits for inmate to receive lower bunk, lower gallery, slow walk, and no stairs). Aside from these actions, the County had no additional authority or responsibility over Plaintiff's placement in a particular cell or bed, including whether Plaintiff was assigned (and actually received) a low bunk bed placement. [SOF ¶32-33]. In fact, the undisputed evidence shows that at all times Plaintiff was

assigned a lower bunk in both Cerner and C-Coms, and that only the CCSO's classification unit had the authority to re-assign him to a different cell or bed. *Id.*

Furthermore, there is no evidence that Cermak or any of its employees were ever aware that Plaintiff was without a low bunk, yet failed to reasonably respond. Although Plaintiff claims that the "the nurses" were aware that he was not given a low bunk in September of 2016, he also testified that he witnessed "the nurses" telling correctional officers that he needed a low bunk. [SOF ¶19]. Similarly, the evidence shows that when Cermak officials were forwarded a grievance Plaintiff had filed with the CCSO, in August of 2016, wherein he complained that he was not provided a low bunk, a County official responded by confirming that Plaintiff had an active alert for a low bunk and forwarded that information back to CCSO officials. [SOF ¶40-43]. Thus, even if we were to assume *arguendo* that Plaintiff was somehow "forced" to have a top bunk, despite having been assigned a low bunk, and that the County was made aware of this *vis-à-vis* "the nurses" or the grievance process, the undisputed evidence shows that everything was done within the County's authority to address the matter, which was to alert the CCSO so that Plaintiff could be reassigned to a new cell or otherwise accommodated.

Therefore, there is no genuine dispute that Defendant Cook County did not intentionally discriminate against Plaintiff based on his disability, and that they took reasonable measures to accommodate him. Accordingly, Defendant Cook County is entitled to judgment as to all claims against it in Plaintiff's Complaint, as a matter of law.

        Respectfully Submitted,
        KIMBERLY M. FOXX
        State's Attorney of Cook County

By:   */s/ Patrick D. Morris*
      Patrick D. Morris
      Assistant State's Attorney
      50 W. Washington St., Suite 2760

Chicago, Illinois 60602
(312) 603-1426
Patrick.Morris@cookcountyil.gov

*Counsel for Defendant Cook County, IL*

11