IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Damon Turange, )
)
      *Plaintiff*, )
) 16 C 11672
      *-vs-* )
) Judge Norgle, Sr.
Thomas Dart, Sheriff of Cook )
County, and Cook County, Illinois, )
)
      *Defendants.* )
)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Damon Turnage is epileptic and suffers seizures. Frequently these seizures occur when Turnage sleeps. Although Turnage was provided a lower bunk alert to accommodation this disability, Turnage was assigned to Division 10 in 2016 and was not provided a lower bunk on numerous occasions by officials at the Cook County Jail. Plaintiff suffered serious physical injures as a result of a fall on September 21, 2016.

Defendants Dart and Cook County argue Turnage's claim must fail because he failed to exhaust available administrative remedies as required by the PLRA. ECF No. 63, Dart's Memorandum at 5-7; ECF No. 66, Cook County's Memorandum at 5-7. This argument must fail because defendants fail to explain Turange did not exhaust available administrative remedies.

In addition, defendants argue there is no evidence they discriminated against Turnage because of his disability. ECF No. 63, Dart's Memorandum at 8-9; ECF No. 66, Cook County's Memorandum at 7-10. The Court should reject this argument because, for the reasons explained below, Turnage notified defendants on multiple occasions of a need for a bottom bunk to accommodate his disability and defendants refused to provide the accommodation.

For the reasons below stated, the Court should deny defendants' motions for summary judgment.

## I. Facts

Plaintiff Damon Turnage began to experience seizures as a young child. Cook County's Statement of Material Facts (CCSOMF) ¶ 7. Turnage has seizures "a lot" including up to three times a week. *Id.* Most of the seizures occur when Turnage is asleep. Plaintiff's Statement of Additional Facts (PSOAF) ¶ 10.

Turnage was processed into the Cook County Jail on April 9, 2016 and reported to Jail staff he had epilepsy. CCSOMF ¶¶ 8-9. The medical staff prescribed at least two different medications to address the epilepsy and entered an order for Turnage to have a bottom bunk. *Id.*¶¶ 9-10. An alert was also entered that Turnage had a "Seizure Disorder." PSOAF ¶ 2.

Prior to May 7, 2016, Turnage testified that he submitted grievances about placement to a top bunk in Division 10. PSOAF ¶ 11. From May 4,

2016 to May 6, 2016, there is no question that Turnage was assigned to a cell in Division 10, Tier 1A with another inmate who also was prescribed a bottom bunk permit for medical records. CCSOMF ¶¶12-15. Although Turnage and his cellmate advised jail officials to remedy this matter, they were told it was not possible to reassign either inmate to another cell and to "work it out" amongst themselves. CCSOMF ¶¶ 13; PSOAF ¶¶ 4-6.

There is no dispute Turnage suffered a seizure from his top bunk and fell to the ground on May 5, 2016 and was treated in the emergency room for injuries. CCSOMF ¶¶ 14-15.

After the May 5, 2016 fall, Turnage was moved out of Division 10. PSOAF ¶ 27.

Turnage returned to Division 10 in August 2016 and was assigned to Tier 2A. CCSOMF ¶ 17. During this period, Turnage again was assigned to a cell with an inmate who reported to also have a bottom bunk permit. CCSOMF ¶ 20. Although Turnage raised this matter with jail officials and requested a bottom bunk, no action was taken to relocate him to another cell. PSOAF ¶¶ 7-8; CCSOMF ¶ 20. On September 10, 2016 Turnage complained in an appeal to a grievance that despite submitting medical slips he continued to be on a top bunk. CCSOMF ¶ 42. There is no dispute that on September 21, 2016 Turnage had another seizure and fell while sleeping on the top bunk in his cell. CCSOMF ¶ 18. After this fall Turnage

was diagnosed with a broken right ankle and given a cast which he wore for at least one month. CCSOF ¶ 22.

## II. Defendants do not establish Turnage failed to exhaust available administrative remedies

Defendants argue this entire case must be dismissed because Turnage failed to exhaust available administrative remedies. ECF No. 63, Dart's Memorandum at 5-7; ECF No. 66, Cook County's Memorandum at 5-7. The Court should reject this argument because Turnage did exhaust at least two grievances regarding injuries caused by the jail's failure to accommodate his disability.

Under the PLRA, prisoners must exhaust intra-prison administrative remedies before filing suit in federal court. *Hernandez v. Dart*, 814 F.3d 836, 841 (7th Cir. 2016). But that exhaustion requirement is excused if the intra-prison administrative procedure is "genuinely unavailable or nonexistent." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018) (quoting *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016)). Failure to exhaust "is an affirmative defense, and the burden of proof is on the defendants." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

As an initial matter, the defendants do not explanation the available administrative remedies for Turnage and how he failed to satisfy the intra-prison administrative remedies. The failure to explain the available reme-

dies and why Turnage did not obey these internal procedures leaves defendants unable to satisfy their burden to prove this affirmative defense.

Turning to the grievances that were exchanged in discovery, there can be no doubt that Turnage exhausted available administrative remedies pertaining to injuries caused by falling from his top bunk. In a grievance dated August 8, 2016, Turnage complained of ongoing injuries caused by a fall from his top bunk in May. CCSOF ¶ 40. Turnage received a response to this grievance and filed an appeal on September 10, 2016 complaining that he continued to be "on the top bunk and I have seizures." CCSOMF ¶ 42. This appeal and the response by the jail is below:

ECF No. 64-6 at 8, Grievance assigned control number 2016x6762. Defendants offer no explanation what additional administrative procedure was available for Turnage after the jail officials denied his appeal.

In addition to the above identified grievance, there is no question that Turnage filed another grievance on September 26, 2016 complaining that he suffered physical injuries due to a fall on September 21, 2016 because jail officials did not honor his lower bunk permit. CCSOMF ¶ 44. This grievance was assigned control number 2016x8336 and there is no doubt that Turnage appealed this grievance:



PSOAF ¶ 20; ECF No. 64-4 at 5, Grievance assigned control number 2016x8336. Defendants' argument that Turnage did not exhaust available administrative remedies is simply without support.

A few other points must be addressed regarding the intra-prison remedies. Jeff Johnsen, the Chief of the Department of Corrections, testified classification is a nongrievable matter according to a department policy. PSOAF ¶¶ 15-16. In this case, the unrebutted evidence is that Turnage was repeatedly told by jail officials that "classification" was responsible for his housing assignment. PSOAF ¶¶ 6-8; CCSOMF ¶ 29. Accordingly, because policy at the jail does not permit an inmate to grieve about "classification" and Turnage was told that "classification" was the department responsible for his bunk assignment, Turnage did not have available administrative remedies to complain generally of his top bunk placement and the PLRA exhaustion requirement does not apply. Furthermore, Turnage testified he filed grievances before May 7, 2016 that were not timely addressed by the defendants. PSOAF ¶ 11. That the defendants did not address these grievances makes sense since an inmate may not grieve about decisions by the "classification" unit. The Court, therefore, cannot accept defendant Cook County's argument that the undisputed record is that "Plaintiff never filed a grievance prior to his fall on May 5, 2016 to advise prison officials of the issue." ECF No. 66, Defendant Cook County's Memorandum at 6.

For the above stated reasons, the Court should find the defendants failed to prove that Turnage failed to exhaust available administrative remedies.

### III. Evidence defendants violated Turnage's rights under the ADA

The ADA is organized to prohibit discrimination in public services, programs, and activities. *Lacy v. Cook County*, 897 F.3d 847, 852 (7th Cir. 2018). To allege a claim under Title II of the ADA, a plaintiff must show: "(1) that he is a qualified individual with a disability; (2) that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was by reason of his disability." *Id.* at 853 (internal citations omitted). The Seventh Circuit explained in *Lacy* "[i]t is well established that a failure to make reasonable modifications in policies, practices, or procedures can constitute discrimination under Title II." *Id.*

The failure to accommodate a lower bunk permit is a claim that has been recognized under the ADA. *See Johnson v. Godinez*, 2015 WL 135103, at *2 (N.D. Ill. Jan 9, 2015) (plaintiff whose lower bunk/low gallery permits were unenforced stated an ADA and Rehab Act claim because he could not climb the stairs and could not attend meals); *Norris v. Godinez*, 2010 WL 2681287, at *1 (N.D. Ill. July 6, 2010) (inmate with various ailments that merited low bunk permit factually stated ADA claim after he was forced to use the top bunk and he fell and injured himself).

In this case, the defendants do not dispute that Turnage is a qualified person with a disability or that he required an accommodation engage

in the program or activity of sleeping due to his seizure disorder caused by epilepsy. This is conclusion is logical since defendant Cook County acknowledged Turnage has seizures "a lot" including up to three times a week. CCSOMF ¶ 7. And the record is undisputed that many of Turnage's seizures occurred when he was asleep. PSOAF ¶ 10.

Defendants contend, however, there is no genuine dispute of material fact of a failure to accommodate plaintiff Turnage. Defendant Dart argues Turnage is unable to demonstrate the "Sheriff failed to accommodate his disability on September 21, 2016." ECF No. 63, Dart's Memorandum at 8. Defendant Cook County contends it was only responsible for prescribing "appropriate medication and [to] alert[] the CCSO that he was to be assigned to a low bunk because of his seizure disorder, thereby providing reasonable accommodations for his alleged disability."[1] ECF No. 66, Cook County Memorandum at 9. The Court should reject these arguments.

First, it is the responsibility of the Sheriff and Cook County to house inmates with disabilities appropriately in accordance with the Agreed Order entered in May 2010. PSOAF ¶ 1. Accordingly, the County's argument that

---

[1] Cook County's citation to *Green v. Butler*, 2019 WL 5910296 (S.D. Ill. July 19, 2019), is not helpful for the Court's analysis. *See* ECF No. 66, Cook County's Memorandum at 9. In *Green*, the court held the plaintiff should not qualify as disabled under the ADA because "the evidence and the case law reveal that Plaintiff's injury to his knee was a temporary, non-chronic condition." *Green*, 2019 WL 5910296, at *9. The court continued by stating that even if the plaintiff was disabled, a lower bunk permit and other accommodations were reasonable under the ADA and no violation occurred. *Id.* Here, the plaintiff presents evidence the defendants continually failed to provide him with a lower bunk despite raising numerous complaints with the medical and correctional staff.

it once a "lower bunk" alert was transmitted to the Sheriff's "classification unit" the placement of Turnage to a low bunk fell exclusively to the Sheriff, ECF No. 66, Cook County Memorandum at 9, must fail. Indeed, the undisputed record is that Turnage repeatedly complained to medical staff about the failure to provide a lower bunk. CCSOMF ¶¶ 19, 42; PSOAF ¶ 26. Moreover, in response to Turnage's appeal on September 10, 2016 where he complained of an ongoing placement to a top bunk and a seizure disorder, Cook County had full knowledge of Turnage's allegation he was not accommodated and Cook County employee RN Susan Shebel took no action to address this concern and wrote "DOC issue." CCSOMF ¶ 42; PSOAF ¶ 18. Although the Sheriff unquestionably had responsibility to provide Turnage a lower bunk in Division 10, the undisputed evidence is Cook County also had some say where Turnage was housed too. *See Clemons v. Dart*, 168 F.Supp.3d 1060, 1064 (N.D. Ill. March 9, 2016) (noting the Sheriff and Cook County had involvement in housing prisoners at the jail).

Second, in the context of Turnage's September 21, 2016 fall, Dart argues plaintiff "never provided Defendant Dart with any notice prior to the alleged fall that the provided accommodation, *i.e.* the low bunk permit, was either insufficient or not being honored by the Plaintiff's cellmate." ECF No 63, Dart's Memorandum at 8. This statement is disputed at summary judgment:

a) On April 20, 2016, the Sheriff documented Turnage has a "medical emergency" where he had a seizure in Division 10. PSOAF ¶ 20.

b) Prior to May 7, 2016, Turnage testified he filed grievances regarding assignment to a top bunk. PSOAF ¶ 11.

c) Upon the assignment to Tier 1A in Division 10 around May 5, 2016, he and his cellmates told the jail officials they both had lower bunks and requested a cell reassignment. CCSOMF ¶¶ 12-13. The officers told them a cell reassignment was not possible and they should "work it out" amongst themselves. CCSOMF ¶ 13. The next shift, Turnage and his cellmate again requested a cell reassignment and were told "classification" was responsible for all movement. PSOAF ¶ 6.

d) On May 7, 2016, Turnage filed a grievance about the assignment to a cell on Tier 1A with bunk beds where both inmates had orders to be on the bottom bunk. CCSOMF ¶ 37.

e) Turnage filed a few grievances about a fall on May 5, 2016 from his top bunk "because it was taking a long time" for the jail officials to respond. PSOAF ¶ 12.

f) When Turnage returned to Division 10 on August 30, 2016, Turnage was assigned to a cell with another inmate who reported that he also had a low bunk permit. PSOAF ¶ 7; CCSOMF ¶¶ 19-20.

g) When assigned to Division 10, Tier 2A, Turnage complained to the nurses and correctional staff that he was unable to use the lower bunk and requested to be relocated but it never occurred. CCSOMF ¶ 19.

h) Turnage submitted an appeal to a grievance on September 10, 2016 complaining he "was still on the top bunk and I have seizures," to which Susan Shebel responded on September 28, 2016 that "you have an order for a lower bunk entered 9/19/15, and it's still active. DOC issue." CCSOMF ¶ 42.

i) In an incident report generated by the Sheriff after Turnage fell on September 21, 2016, the Sheriff's staff wrote Turnage "does have a history of seizures." PSOAF ¶ 13.

Without question, there is no doubt defendants all had notice that Turnage required a bottom bunk to accommodate his disability. There is also no dispute that Turnage provided notice on multiple occasions using multiple vehicles (oral requests to jail staff, grievances, medical request slips) that he continually was assigned to cells in Division 10 but was not provided a bottom bunk. Despite this notice, the defendants continually refused to accommodate Turnage leading to a serious fall on September 21, 2016 while assigned to Division 10, Tier 2A. This evidence may support a finding that defendants refused to accommodate Turnage's disability. *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 848 (7th Cir. 1999) ("It is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation.").

There is also sufficient evidence to support a finding of deliberate indifference to obtain compensatory damages under Title II. *Lacy v. Cook County*, 897 F.3d 847, 862-63 (7th Cir. 2018). This requires a plaintiff to show "both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* The evidence, as shown above, demonstrates defendants knew the plaintiff required a lower bunk to accommodate his disability, that he was repeatedly assigned to cells where he was unable to use the lower bunk because the cellmate also reported to have a low bunk assignment, and that the de-

fendants failed to respond to Turnage's oral and written complaints seeking to remedy this matter. *See Stokes v. City of Chicago*, 2018 WL 497365, *3 (N. D. Ill. Jan. 22, 2018) (a refusal to put a detainee reporting a seizure disorder in an "observable cell" put defendant on notice of a need for an accommodation and could be discrimination)

### IV. Conclusion

For the reasons above stated, the Court should deny defendants' motions for summary judgment.

Respectfully submitted,

/s/ Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10150 S. Western Ave., Ste. Rear
Chicago, IL 60643
(773)233-7900
patrickmorrissey1920@gmail.com

*an attorney for plaintiff*